IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SPECIAL TRADING FUND, <br><br> PLAINTIFF, <br><br> VS. <br><br> ROBERT N. BONTEMPO, NICHOLAS P. CONSTANTAKIS, DAVID L. DENINNO, ROBERT H. FOGLESONG, MARK E. KAPLAN, PAMELA S. PIERCE, DAVID N. WORMLEY, AND MICHAEL BAKER CORPORATION, <br><br> DEFENDANTS. | CIVIL ACTION NO. |

## COMPLAINT AND DEMAND FOR JURY TRIAL,

Plaintiff, by its attorneys, alleges upon personal knowledge as to itself and its own acts, and as to all other matters upon information and belief derived from, *inter alia*, a review of documents filed with the Securities and Exchange Commission ("SEC"), press releases issued by the Defendants and others, and publicly available news sources, such as newspaper articles, as follows:

## NATURE OF THE ACTION

1. This is an individual action on behalf of Plaintiff asserting violations of Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e). Defendants are

Michael Baker Corporation ("Baker" or the "Company") and its directors. Plaintiff seeks injunctive relief herein to, *inter alia*, enjoin the implementation of the proposed transaction pursuant to which a wholly owned subsidiary of Integrated Mission Solutions, LLC ("IMS") will acquire Michael Baker Corporation ("Baker") (the "Acquisition") *via* a tender offer because defendants have provided materially incomplete and misleading information to Plaintiff and Baker's other shareholders, information on which Plaintiff and other reasonable investors would rely in making a decision as to whether to tender their shares in the tender offer.

## JURISDICTION AND VENUE

2. Plaintiff asserts a claim under Section 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(e). This Court thus has jurisdiction over this action pursuant to Section 27 of the Securities Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. § 1331.

3. Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because the transactions which gave rise to this action occurred in substantial part in the Western District of Pennsylvania, and because Baker is headquartered and located at 100 Airside Drive, Moon Township, PA within the Western District of Pennsylvania.

## PARTIES

4. Plaintiff Special Trading Fund has owned shares of Baker's common stock since on or about July 20, 2001 and continues to own such shares.

5. Defendant Baker is a Pennsylvania corporation which maintains its principal executive offices at Airside Business Park, 100 Airside Drive, Moon Township, PA. Baker provides engineering, design, planning and construction services to clients in both the public and private sector. Baker is a publicly traded company listed on the New York Stock Exchange with the symbol BKR.

6. Defendant Robert N. Bontempo ("Bontempo) has served as a director of the Company since 1997 and currently serves as the chairman of the Company's board of directors (the "Board").

7. Defendant Nicholas P. Constantakis ("Constantakis") has served as a director of the Company since 1999.

8. Defendant David L. DeNinno ("DeNinno") has served as a director of the Company since 2012.

9. Defendant Robert H. Foglesong ("Foglesong") has served as a director of the Company since 2006.

10. Defendant Mark E. Kaplan ("Kaplan") has served as a director of the Company since 2008.

11. Defendant Pamela S. Pierce ("Pierce") has served as a director of the Company since 2005.

12. Defendant David N. Wormley ("Wormley") has served as a director of the Company since 2008.

13. Non-Defendant Integrated Mission Solutions, LLC is a Delaware limited

liability company, with its principal executive offices at 11 Canal Center Plaza, Suite 350 Alexandria, Virginia 22314. IMS provides engineering and professional services, intelligence and technology solutions to its clients. IMS has a diverse customer base with a primary focus on the United States Intelligence Community, Department of State, Department of Defense, Department of Homeland Security, United States Army Corps of Engineers, and other federal agencies. IMS is an affiliate of D.C. Capital Partners, L.L.C. ("DC Capital"), which is a Virginia limited liability company with principal executive offices at 11 Canal Center Plaza, Suite 350, Alexandria, Virginia 22314. DC Capital is a private investment firm controlled by Thomas J. Campbell.

14. The Defendants identified in paragraphs 6 through 12 collectively constitute the entirety of Baker's board of directors. These seven individuals are hereinafter sometimes referred to collectively as the "Individual Defendants."

15. Each Defendant herein is sued individually. The Individual Defendants are also sued in their capacity as directors of Baker. The liability of each Defendant arises from the fact that they have engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

**SUBSTANTIVE ALLEGATIONS**

16. On July 29, 2013, Baker's directors caused it to announce that it had entered into an agreement to be acquired by IMS (the "Acquisition Agreement"). Under the terms of the Acquisition Agreement, Baker's shareholders will receive $40.50 in cash for each share of common stock that they own. Thereafter, on September 9, 2013, under the terms

of the Acquisition Agreement, a subsidiary of IMS commenced a tender offer to acquire all of the outstanding Baker common shares (the "Tender Offer").

17. In connection with the Tender Offer, Baker's directors caused it to file with the Securities and Exchange Commission (the "SEC") and mail to Baker's shareholders a recommendation statement in which they recommend that Baker's shareholders tender their shares pursuant to the Tender Offer. However, the Recommendation Statement contains untrue statements of material fact or omitted fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, with respect to the Tender Offer. The Individual Defendants knew or should have known that the Recommendation Statement misrepresented and/or omitted material information, but they caused the Company to file it with the SEC and distribute to Plaintiff to disguise the fact that the Acquisition Agreement was meant to appease a large shareholder who sought liquidity for its shares and to maintain their roles as directors of the Company. As a result of these misrepresentations and omissions, Plaintiff will suffer harm because it will be forced to make a decision on whether to tender its shares without being fully informed.[1]

18. *In this regard, the Recommendation Statement omits material facts regarding the Individual Defendants' conflicts of interest. Specifically, while the*

---

[1] This is precisely the sort of harm against which section 14(e) of the Williams Act is designed to protect. *See Piper v. Chris-Craft Indus.*, 430 U.S. 1, 31-34 (1977) (explaining that the legislative history made it clear that Congress's intent in enacting 14(e) was to "broaden the scope of protection afforded to shareholders" by providing full and fair disclosure to shareholders in conjunction with a tender offer).

5

*Recommendation Statement discloses that three members of Baker's current Board will serve as directors of IMS's board of managers (the "Continuing Directors"), it fails to disclose the methodology that will be used to select the Continuing Directors, the compensation they will receive, and, most importantly, information regarding who will select them.* It is axiomatic that information regarding the conflicts of interest of the Company's directors is material and must be disclosed.

19. Further, the Individual Defendants failed to disclose material information regarding the conflicts of interest of Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), the financial advisor the Board retained to advise in the sale process. *In this regard, the Recommendation Statement discloses that Houlihan Lokey is expected to receive fees for its services in negotiating and recommending the transaction estimated at approximately one percent of the transaction value, a portion of which became payable upon the delivery of Houlihan Lokey's opinion and the principal portion of which is <u>contingent</u> upon the consummation of the Acquisition Agreement. However, the Recommendation Statement fails to disclose the break-down of these fees and fails to disclose the amount of the fee <u>contingent</u> upon consummation of the Acquisition Agreement.* This information is material because the greater the percentage of Houlihan Lokey's fee that is contingent upon consummation of the Acquisition Agreement, the more invested Houlihan Lokey would be in ensuring that its opinion supports the Acquisition Agreement.

20. In addition, the Recommendation Statement discloses that "in the ordinary course of business, certain of Houlihan Lokey's employees and affiliates, as well as

6

investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade, in debt, equity, and other securities and financial instruments (including loans and other obligations) of, or investments in, IMS, Project Steel Merger Sub, Inc., or any other party that may be involved in the Offer and the Merger and their respective affiliates or any currency or commodity that may be involved in the Offer and the Merger." *However, it fails to disclose the value of any positions, trades, or investments that Houlihan Lokey's employees and affiliates, as well as investment funds in which they may have financial interests or with which they may co-invest, have in these regards.* In this regard, this information is material because to the extent Houlihan Lokey owns equity of IMS or its affiliates, it can be expected to favor IMS's interests at the expense of Baker and its shareholders.

> 21. Further, the Recommendation Statement also disclose the following:
>
> Houlihan Lokey and certain of its affiliates have in the past provided investment banking, financial advisory and other financial services to DC Capital, an affiliate of IMS and Project Steel Merger Sub, Inc., or one or more security holders, affiliates and/or portfolio companies of investment funds affiliated or associated with DC Capital (collectively, "DC Capital Parent Group"), for which Houlihan Lokey and such affiliates have received compensation. Houlihan Lokey and certain of its affiliates may provide investment banking, financial advisory and other financial services to Baker, DC Capital Parent Group, other participants in the Offer and the Merger or certain of their respective affiliates or security holders in the future, for which Houlihan Lokey and such affiliates may receive compensation. Furthermore, in connection with bankruptcies, restructurings, and similar matters, Houlihan Lokey and certain of its affiliates may have in the past acted, may currently be acting and may in the future act as financial advisor to debtors, creditors, equity holders, trustees, agents and other interested parties (including, without limitation, formal and

Case 2:15-cv-01402-JFC Document 1624 Filed 09/26/15 Page 7 of 18

informal committees or groups of creditors) that may have included or represented and may include or represent, directly or indirectly, or may be or have been adverse to, Baker, DC Capital Parent Group, other participants in the Offer and the Merger or certain of their respective affiliates or security holders, for which advice and services Houlihan Lokey and such affiliates have received and may receive compensation.

*However, the Recommendation Statement fails to disclose (a) the compensation that Houlihan Lokey and certain of its affiliates received for the services described above in recent years, (b) when Houlihan Lokey and certain of its affiliates provided those services, and (c) the compensation that Houlihan Lokey and certain of its affiliates expect to receive for providing investment banking, financial advisory and other financial services to DC Capital Parent Group, other participants in the Offer and the Merger or certain of their respective affiliates or security holders in the future.* In this regard, this information is material because to the extent Houlihan Lokey has a longstanding and/or lucrative business relationship with IMS or its affiliates, it can be expected to favor IMS's interests at the expense of Baker and its shareholders. Notably, despite Houlihan Lokey's apparent conflicts of interest arising from its relationship with IMS and/or DC Capital and/or their affiliates, the Board failed to consider any other financial advisor.

22. The Recommendation Statement also fails to disclose material information regarding Houlihan Lokey's financial analysis which, on information and belief, would suggest a higher price is warranted for Baker. *In this regard, the Recommendation Statement fails to disclose the unlevered, after-tax free cash flows that Baker was forecasted to generate through the fiscal year ending 2017 based on the projections provided by the management of Baker, which information Houlihan used in the discounted*

8

*cash flow analysis underlying its opinion that the $40.50 per share price IMS is paying for Baker is fair. In addition, with regard to Houlihan Lokey's discounted cash flow anaylsis, the Recommendation Statement fails to disclose (a) the methodology used to derive the perpetuity growth rates of 2.50% to 3.00% and (b) the methodology used to derive the discount rates ranging from 14.50% to 15.50%.* Given that Baker's shareholders are being asked to accept a one-time payment of cash and forsake any future interest in Baker, information regarding Baker's projected cash flow is certainly material for a shareholder to make an informed decision. Further, the discounted cash flow analysis has been widely accepted as the most reliable method of valuation, therefore information regarding its calculation is also material.

23. In addition, according to the Recommendation Statement, in its *Selected Companies Analysis*, Houlihan Lokey calculated multiples of enterprise value based on certain financial data for Baker and the selected companies. The selected companies analysis indicated the following:

| Multiple Description | Low | High | Median | Mean |
|---|---|---|---|---|
| **Enterprise Value as a multiple of:** | | | | |
| LTM (based on the latest twelve month information that was publicly available on July 24, 2013 (actual)) Adjusted EBITDA | 5.9x | 11.9x | 8.6x | 8.7x |
| NFY (year ending December 31, 2013 (projected)) Adjusted EBITDA | 5.4x | 9.9x | 7.4x | 7.5x |

Thereafter, Houlihan Lokey applied multiple ranges of 6.0x to 7.0x LTM Adjusted EBITDA and 5.5x to 6.5x NFY Adjusted EBITDA based on the selected companies

9

analysis to the corresponding financial data for Baker. *The Recommendation Statement is fails to disclose Houlihan Lokey's rationale for applying multiple ranges entirely below the median and mean multiples indicated for the selected companies to the corresponding financial data for Baker.* In this regard, the criteria used by a financial advisor to render its fairness opinion is material to the public shareholders of Baker in determining how much weight to place on the fairness opinion and must therefore be disclosed. Specifically, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Only providing some of that information is insufficient to fulfill the duty of providing a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendation of the Board–that shareholders tender their shares in the Offer–relies.

24. Additionally, the Recommendation Statement misrepresents or fails to disclose additional details about the sale process in order to make it appear robust and mask its deficiencies.[2] In this regard, the sale process effectively began on December 19, 2012, when Baker publicly announced that DC Capital proposed that an affiliate and a wholly owned subsidiary of IMS acquire Baker at a price of $24.25 per share in cash.[3]

---

[2] Information regarding the sale process is material to Baker's public shareholders in determining the extent to which the Individual Defendants complied with their duties of loyalty and care to protect the best interests of the Company and to put the interests of Baker before their own.

[3] Previously, on July 18, 2012, the founder and president of DC Capital, Mr. Thomas J. Campbell, had filed a Schedule 13D with the SEC disclosing his acquisition of approximately 5.1% of all outstanding Baker shares and indicating his interest in exploring

Approximately one week later, a shareholder of Baker, Crescendo Partners ("Crescendo") published an open letter to the Board questioning the adequacy of DC Capital's proposal and threatening to nominate a slate of directors for election at the Company's annual meeting if the Board did not undertake a robust sales process aimed at obtaining a value maximizing transaction. Crescendo has a history of proxy contests, and so it is fair to say that this was no idle threat.[4] Indeed, Crescendo notified Baker on February 28, 2013 that it had nominated three individuals for election to the Board at the 2013 annual meeting of shareholders.

25. In response to Crescendo's letter, the Individual Defendants sought to appease Crescendo by forming a Strategic Options Committee (the "Committee"). While the Recommendation Statement indicates Committee activity from the time of its formation to on or about July 11, 2013, it fails to disclose any activity of the Committee after that point through and including the signing of the Sale Agreement on July 29, 2013. This includes arguably the most critical period of the sale process during which the parties submitted their third round proposals and their final proposals. As alleged at footnote 2, information regarding the sale process is material to Baker's public shareholders in determining the extent to which the Individual Defendants complied with their duties of loyalty and care to protect the best interests of the Company and to put the interests of

---

strategic alternatives with Baker. He noted also that Baker management had not responded to his calls to discuss strategic alternatives.

[4]Baker's then Chairman, perhaps wanting to avoid being voted off of the Board, submitted his notice of retirement approximately two weeks later.

11

Baker before their own.

26. The Board also retained Houlihan Lokey as the Board's financial advisor. The Recommendation Statement fails to disclose, however, material information about Houlihan Lokey's conflicts of interest, as alleged *supra* at paragraphs 21-22. The Recommendation Statement also notes, with vague uncertainty, that Houlihan Lokey may have in the past acted as financial advisor to, *inter alia*, interested parties that may have included, directly or indirectly, *inter alia*, IMS's affiliates or other participants in the Sale Agreement. This cryptic admission couched in equivocal language suggests that there is more to Houlihan Lokey's conflict of interest in this regard than the Recommendation Statement discloses. As alleged *supra*, information regarding Houlihan Lokey's conflicts of interest is clearly material information as Houlihan Lokey advised Baker's Board on the sale process and rendered a fairness opinion which the Board relied upon in determining to enter into the Acquisition Agreement.

27. Nonetheless, the Individual Defendants proceeded with the sale process and in March, Houlihan Lokey, at the behest of the Committee, contacted or responded to inbound inquiries from 20 parties, 14 of which signed confidentiality agreements with Baker.[5] Ten of these parties provided preliminary of indications of interest by the first week of May 2013. Eight of these indicated cash prices per share with a range of $25.00

---

[5] The Recommendation Statement does not disclose various details about these parties, including the number of strategic and financial parties, when and how they contacted Baker or were contacted by Houlihan Lokey, and the levels of interest expressed by these parties. It does disclose that DC Capital was among the 20 parties contacted.

12

per share to $33.77 per share, the ninth proposed a stock-for-stock transaction and the tenth did not include an indication of value

28. Rather than inviting these ten parties further into the process in order to encourage them to make more favorable bids, the Committee instead determined to invite only five to continue: IMS, Company A, Company B, Company C, and Company D.

29. After additional due diligence by these five companies that included meetings with Baker management, IMS, Company A and Company B submitted their second round proposals at $37.50, $37.00, and $37.00 per share respectively. **Each party also proposed to nominate one or more current Baker directors to continue on as board members post-sale.** The Individual Defendants attempt to spin this fact as evidence of the parties' commitments to Baker's employees and other constituencies, but it reflects instead the directors' desire to retain their positions on the Board in the face of Crescendo's threat of a proxy contest and their removal.[6] Indeed, the Sale Agreement with IMS does ensure that three of the Individual Defendants will continue on as directors but, as alleged *supra*, the Recommendation Statement fails to disclose details of this conflict of interest, including who will select the directors and the compensation to which they will be entitled.

30. Following a third round of bidding in which IMS, Company A, and Company B raised their offers to $39.00, $38.50, and $38.25 per share respectively, the

---

[6] It is not clear from the Recommendation Statement if the draft transaction agreement provided to the parties already included such a provision.

13

Board determined to meet with Mr. Campbell, and did so on July 20, 2013 in an extended interview.

31. On July 24, 2013, the parties submitted their final offers.[7] Company B, likely aware that after three rounds of bidding the process was nearing its end, raised its offer a full $3.00 per share and submitted the highest proposed price at $41.25 per share. Both Company A and IMS proposed per share prices of $40.00. Despite the fact that Company B outbid IMS by $1.25 per share[8] and despite Company B's general willingness to relax certain requirements (the details of which are not disclosed in the Recommendation Statement), the Board and its advisors apparently took issue with Company B's proposed deal protections. *The Recommendation Statement does not disclose, however, the details of Company B's proposed deal protections, or at a minimum, how those compared to those offered by Company A or IMS.* It does disclose that each of Company A, B, and IMS agreed to substantially comparable termination fee provisions. It also discloses that Company B included deal protections with only minimal additional flexibility for the Board to consider other proposals after signing a definitive agreement. There is a certain irony in the Board rejecting the one superior proposal it received by taking issue with the amount of flexibility it allowed them to choose a superior proposal. This is especially true given the Individual Defendants' admission in the Recommendation

---

[7] In between the third round proposals and the final proposals, Company A had, on an unsolicited basis, increased its proposed price to $40.00.

[8] Company B's proposed price of $41.25 is also 75 cents higher per share than the price that Baker and IMS agreed to in the Sale Agreement.

Statement that the most probable interested parties had been identified in the course of the sale process.

32. Additionally, both Company A and B agreed to maintain current employee benefits and compensation for two years, while IMS agreed to do so for only one year. All three of the parties committed to maintain current offices and staffing levels to the extent commercially reasonable. While the Individual Defendants attempt to downplay these proposals on the part of Company A and B by indicating that they did not provide a mechanism to enforce them, the fact that both were willing to enter into a contract containing those terms undermines that notion. Naturally, the contract would be enforceable. Moreover, the purported enforcement mechanism proposed by IMS necessitates a continuing role on the board for Baker's directors post-sale, and is in actuality a conflict of interest that discouraged the Board from engaging in a fair process and disclosing material information in the Recommendation Statement.

33. The Recommendation Statement discloses no additional contact with Company A, but Company B remained undeterred and on July 26, 2013 indicated its continued desire to pursue a possible acquisition of Baker, but noted that it would need until August 2nd for reasons unrelated to the transaction. Rather than wait a few extra days to accommodate the highest bidder, the Board moved forward with IMS and reached the Sale Agreement with IMS on the morning of July 29, 2013.

34. It is perhaps unsurprising that Baker's directors favor a sale of the Company to IMS given that each of the are receiving cash payments for their unvested restricted

stock that they would not otherwise receive at this time absent a sale of the Company as follows:

| Director | Value of Unvested Restricted Shares |
|---|---|
| Robert N. Bontempo | $121,500 |
| Nicholas P. Constantakis | $121,500 |
| David L. DeNinno | $121,500 |
| Robert H. Foglesong | $121,500 |
| Mark E. Kaplan | $121,500 |
| Pamela S. Pierce | $121,500 |
| David N. Wormley | $121,500 |

## CLAIM FOR RELIEF

**(Individual Claim For Violations of Section 14(e) of the Exchange Act)**

35. Plaintiff repeats and realleges the foregoing allegations as if set forth herein at length.

36. Defendants violated Section 14(e) of the Exchange Act by engaging in the conduct and by (a) making untrue statements of material fact, or omitting material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and/or (b) engaging in fraudulent, deceptive or manipulative acts or practices in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.

37. Defendants knew or recklessly disregarded the fact that their statements and/or conduct with respect to the tender offer described herein included the material false statements and omissions described herein.

38. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender its shares to IMS, for which monetary damages alone are insufficient compensation.

**WHEREFORE,** Plaintiff demands judgment as follows:

a. preliminarily and permanently enjoining defendants and all persons acting in concert with them, from proceeding with, consummating or closing the proposed transaction;

b. In the event the proposed transaction is consummated, rescinding it and setting it aside;

c. awarding Plaintiff compensatory and/or rescissory damages, as well as pre and post-trial interest, as allowed by law;

d. awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and other costs to the extent Plaintiff confers a common benefit on an ascertainable group or other individuals or entities; and

e. granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 26, 2013  **FEINSTEIN DOYLE, PAYNE & KRAVEC, LLC**

By: s/Joseph N. Kravec, Jr.
Joseph N. Kravec, Jr. (PA Bar No. 68992)
429 Forbes Avenue
Allegheny Building, 17th Floor
Pittsburgh, Pennsylvania 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
Email: JKravec@fdpklaw.com

THE BRUALDI LAW FIRM, P.C.
Richard B. Brualdi
29 Broadway, Suite 2400
New York, New York 10006
Telephone: (212) 952-0602
Facsimile: (212) 952-0608
Email: rbrualdi@brualdilawfirm.com

*Counsel for Plaintiff Special Trading Fund*

Case 1:05-cv-01025-DPK Document 1324 Filed 09/26/13 Page 18 of 18